**STATE of Minnesota, Respondent,**

v.

**George Kostas PAPADAKIS, Appellant.**

**No. C1–01–961.**

Court of Appeals of Minnesota.

May 7, 2002.

Mike Hatch, Attorney General, St. Paul, MN; and Thomas J. Harbinson, Scott County Attorney, Eva L. Cheney, Assistant Scott County Attorney, Shakopee, MN, (for respondent).

Barry V. Voss, Minneapolis, MN, (for appellant).

Considered and decided by RANDALL, Presiding Judge, LANSING, Judge, and KLAPHAKE, Judge.

## OPINION

R.A. RANDALL, Judge.

After a bench trial, the district court found appellant guilty of second-degree controlled-substance possession in violation of Minn.Stat. § 152.022, subds. 2(1), 3(a) (2000). The district court took seven counts of fifth-degree controlled-substance-possession under advisement and found appellant guilty of all counts. *See* Minn.Stat. § 152.025, subds. 2(1), 3(a). Appellant alleges (1) there is insufficient evidence to convict him of second-degree and fifth-degree controlled-substance possession; (2) there is not a substantial basis to conclude that the search warrant was based on probable cause; (3) the district court abused its discretion in refusing to consider appellant's motion to reconsider; and (4) appellant's seven fifth-degree controlled-substance convictions are based on the same criminal act and should be vacated.

(1) Appellant's actual knowledge of the amount of the controlled substance possessed is not an essential element; (2) the district court had a substantial basis to issue the search warrant; (3) the district court did not abuse its discretion in refusing a motion to reconsider; (4) the seven fifth-degree controlled-substance convictions were part of a single behavioral incident but were not the same criminal act. Affirmed.

## FACTS

In May 1999, an individual contacted the Savage Police Department stating that he personally saw a large amount of short-term traffic at a Savage residence. The informant left his name, address and telephone number. Detective Steve Bolluyt, an Eagan police detective assigned to the South Metro Drug Task Force, telephoned

the informant to confirm the information. The informant gave Bolluyt the appellant's and his wife's names identifying them as the individuals residing at the address. To verify the information, Bolluyt checked Savage Police Department records and telephone records. He discovered that police had last contacted appellant in January 1999. Bolluyt also learned that appellant was previously arrested in 1996 at the same address. The telephone company records verified appellant and his wife as residing at the Savage address.

Within 72 hours before applying for the search warrant, Bolluyt went to the Savage address, saw garbage cans at the curb, and contacted the refuse hauler to obtain the refuse from the address. During a search of the garbage, Bolluyt discovered correspondence addressed to appellant and his wife, a spoon with burn marks on the bottom, and plastic bags with drug residue later identified as cocaine.

Based on this information, a search warrant was issued on June 28, 1999, for the Savage address. On July 1, Bolluyt and other officers executed the search warrant. At that time, appellant was not at home, but appellant's wife was. Detective McCormick found bottles, syringes, vials, and packages later identified as steroids in appellant's bedroom. Bolluyt was responsible for cataloging evidence and he listed the items on the search warrant inventory and return.

Detective Grant discovered a lock box in the garage, which contained two scales, a baggie with a white powdery substance, a credit card in appellant's name, a brown chunk-like substance, and $3,885 in cash. Grant photographed the items and gave the box and contents to Detective King, who gave them to Bolluyt. Bolluyt listed the items as "lock box and its contents" on search warrant inventory and return.

Bolluyt then brought all items to the South Metro Drug Task Force where he divided and separately packaged the items from the lock box, labeled them, placed them in the evidence locker, and retained the key. After securing the evidence, Bolluyt drove to appellant's place of employment to find him. Appellant was not there, so Bolluyt called appellant's home and left a voice mail message. Appellant returned the call, went to the police station that day, and met with Bolluyt. During the interview, appellant admitted that the cocaine was his, he identified the items from the lock box, and he admitted the steroids were his.

On July 2, 1999, Bolluyt brought the seized evidence to Rebecca Carlson, a chemist at the Minneapolis Public Health Department, for testing. Carlson determined that the white powdery substance was approximately 11.58 grams of cocaine and the brown chunk was hashish, and there were six different types of steroids.

## ISSUES

I.  Was there sufficient evidence to convict appellant of second-degree and fifth-degree controlled-substance possession?

II.  Was there a substantial basis for concluding that the search warrant application established probable cause?

III.  Did the district court abuse its discretion in refusing to consider appellant's motion to reconsider?

IV.  Was appellant properly convicted on seven counts of fifth-degree controlled-substance offense?

## ANALYSIS

I.  Was there sufficient evidence to convict appellant of second-degree and fifth-degree controlled-substance possession?

Appellant alleges there was insufficient evidence to sustain his conviction because

the state did not prove that he knew the quantity of the controlled substance he possessed. The state argues that knowledge of the amount of the drugs possessed is not an essential element and it need only prove that appellant had knowledge of the substance possessed.

When the sufficiency of evidence is challenged, an appellate court's review is limited to analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the fact-finder to reach the verdict that it did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). The same standard of review is applied to bench trials and to jury trials. *State v. Cox,* 278 N.W.2d 62, 65 (Minn.1979). The district court's findings will be upheld if the appellant could reasonably have been found guilty of the charged crimes. *Webb,* 440 N.W.2d at 430. To sustain a conviction, the state must prove all essential elements of the charged crime beyond a reasonable doubt. *State v. Ewing,* 250 Minn. 436, 441, 84 N.W.2d 904, 909 (1957).

Minn. Stat § 152.022, subd. 2(1) (2000) provides:

> A person is guilty of controlled substance crime in the second degree if:
>
> (1) the person unlawfully possesses one or more mixtures of a total weight of six grams or more containing cocaine, heroin, or methamphetamine.

For a second-degree controlled-substance possession conviction the state must prove:

> First, the defendant knowingly possessed one or more mixtures of
>
> [1] a total weight of six grams or more containing cocaine

Second, the defendant knew or believed that the substance possessed cocaine. 10A Minnesota Practice, Crim Jig 20.14 (1999).

■ Therefore, the elements of a crime of possession are: (1) knowledge; (2) possession of the requisite weight and substance; and (3) the act took place at the time and place set forth in the complaint. All three elements must be proven beyond a reasonable doubt for a defendant to be found guilty.

■ We conclude that possession of a controlled substance and knowledge of the nature of the substance are essential elements, but that the state does not have to prove, in addition to all other elements, that appellant knew the precise weight or quantity of the controlled-substance.

■ To satisfy the knowledge element, the state must prove that appellant "had actual knowledge of the nature of the substance." *State v. Florine,* 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975). The Minnesota courts have rejected the contention that the state must prove that appellant knew the quantity of the amount of controlled substance. This court, in *State v. Aviles–Alvarez,* stated, "[w]hile the amount is an essential element of the crime, the defendant's *knowledge* of the amount is not an essential element." *State v. Aviles–Alvarez,* 561 N.W.2d 523, 526 (Minn.App.1997). For a second-degree controlled-substance conviction, the state must prove, beyond a reasonable doubt, that appellant possessed cocaine of more than six grams in weight, but not that appellant knew the actual weight of the contraband.[1] To support the fifth-degree controlled-substance conviction, the state must prove that appellant possessed hash-

---

1. The weight portion of the statute works for or against defendants equally. If the expert testimony as to weight established less than six grams, then appellant would have been guilty only of a lesser crime, even if he had assumed that he bought six grams.

ish and steroids. As to the hashish and steroid fifth-degree controlled-substance counts, possession, but not weight was the issue.

■ There was sufficient evidence that appellant was aware that he possessed cocaine, hashish, and steroids and that he possessed the statutory amount. First, appellant admitted possessing the cocaine and told Bolluyt that the drugs in the garage were his. Second, Detective Bolluyt testified that appellant admitted that there was cocaine in the garage and that the cocaine was his. Third, Rebecca J. Carlson, a chemist at the Minneapolis Public Health Laboratory testified that she performed a GC mass spectrometer analysis on the white powdery substance and evidence and determined that it was approximately 11.58 grams of cocaine. Carlson identified the brown chunk-like substance as hashish, and also identified six different types of steroids. Appellant's statement to the police that the cocaine and drugs in his garage were his, coupled with the chemical tests and Carlson's testimony was sufficient to establish that appellant knew that the substances he possessed were cocaine, hashish, and steroids. Carlson's testimony as to the weight and quantity of the contraband is sufficient to prove that appellant possessed the statutorily required amount of drugs. Viewing the evidence in the light most favorable to the verdict, as we must, we conclude the facts support the guilty verdicts.

II. Was there a substantial basis for concluding that the search warrant application established probable cause?

■ Appellant argues that the search warrant was not supported by probable cause, claiming that the search warrant application relied on information provided by a confidential informant whose credibility was not established and who did not meet the standards established in *State v. Albrecht*, 465 N.W.2d 107, 108 (Minn.App. 1991). The state argues that under the totality of the circumstances, there was sufficient information in the application for an issuing magistrate to conclude there was a reasonable probability that contraband would be found in appellant's residence.

■ The United States and Minnesota constitutions protect a person from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is valid, with a few exceptions, only if conducted pursuant to a valid warrant. *Albrecht*, 465 N.W.2d at 108. A search warrant must be supported by probable cause and be issued by a neutral and detached magistrate. Minn. Stat. § 626.08 (2000); *State v. Harris*, 589 N.W.2d 782, 787 (Minn.1999). In making a determination whether a warrant is supported by probable cause, a reviewing court does not engage in a de novo review, but instead gives deference to the issuing judge's finding of probable cause. A reviewing court is limited to ensuring that the issuing judge had a substantial basis for concluding that probable cause existed. *Harris*, 589 N.W.2d at 787–88.

■ Substantial basis means that there is a fair probability that under the totality-of-the-circumstances test, that evidence or contraband will be found in a particular place. *State v. Zanter*, 535 N.W.2d 624, 633 (Minn.1995). "Elements bearing on this probability include information linking the crime to the place to be searched and the freshness of the information." *State v. Souto*, 578 N.W.2d 744, 747 (Minn.1998). Marginal or doubtful cases should be resolved by the preference for warrants. *State v. McCloskey*, 453 N.W.2d 700, 704 (Minn.1990).

■ Under the totality-of-the-circumstances test, the issuing magistrate makes a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

We conclude there was a substantial basis for the district court to determine that probable cause existed to search appellant's residence. In this case, the supporting affidavit contained the following information: (1) a large amount of short-term traffic was observed at appellant's residence; (2) there was previous police contact with appellant and the last contact was in January 1999; (3) appellant was previously arrested at the residence; and (4) a garbage search uncovered cocaine residue and drug paraphernalia.

In *Albrecht*, this court concluded that an anonymous tip that described the inside of Albrecht's home and stated that Albrecht drove a red-and-white pickup truck was insufficient to support a finding of probable cause for a search warrant. 465 N.W.2d at 109. The officer, however, did not independently corroborate the informant's credibility. *Id.* at 107–08. In this case, unlike *Albrecht*, the informant was not anonymous. The informant left his name and phone number, and Bolluyt verified the informant's name by returning the phone call. Informant reliability and credibility can be established by police corroboration. *McCloskey*, 453 N.W.2d at 703–04.

Additionally, the trash can search provided an independent and substantial basis for the district court's probable cause determination. The search of the trash produced a spoon with burn marks on the bottom and pieces of plastic bags with white powder residue, which later tested positive for cocaine. Thus, the cocaine residue independently confirms Bolluyt's suspicion that contraband might be found in appellant's residence. We conclude the district court had a substantial basis for concluding that probable cause existed to issue a search warrant for appellant's residence. *See Id.* at 704 (stating that in the totality of the circumstances the independent corroboration of an informer is relevant).

III. Did the district court abuse its discretion in refusing to consider appellant's motion to reconsider?

■ Appellant argues that the district court abused its discretion in refusing appellant's motion to reconsider its omnibus ruling. The state notes that there is no rule of criminal procedure that allows a motion to reconsider an omnibus order and argues that whether to entertain such a motion is entirely discretionary with the district court.

The district court, by letter, notified appellant that it would not reconsider its omnibus order because the court was unaware of any rule permitting a party to file a motion to reconsider an omnibus order. The court also stated that it would refuse to reconsider the motion based on its previous omnibus memorandum, which concluded that there is no legal requirement that the state prove that a defendant knew the actual weight of the controlled substance.

■ We conclude that refusing appellant's motion to reconsider the omnibus order was within a district court's discretion. Although the rules of criminal procedure do not specifically authorize motions for reconsideration of omnibus rulings, the district court has the inherent authority to

consider such a motion. The supreme court recognized motions to reconsider in *State v. Montjoy,* 366 N.W.2d 103, 107–08 (Minn.1985) (holding that prosecutor properly moved for clarification and reconsideration of omnibus order). At times, a motion for reconsideration may be the most efficient and preferable course of action, and it can spare parties the time, trouble, and expense of an appeal. *Id.* In addition to recognizing motions for reconsideration or clarification, the supreme court has concluded that the omnibus court itself is "free to entertain and grant a motion to reopen made by the state * * * [.]" *Id.* at 107; *see also State v. Needham,* 488 N.W.2d 294 (Minn.1992) (remanded for reopened omnibus hearing).

Thus, given the district court's discretion in whether to grant or deny motions to reconsider an omnibus ruling, it was not error to deny appellant's motion to reconsider.

## IV. Was appellant properly convicted on seven counts of fifth-degree controlled-substance offense?

■ Under Minnesota law there is a distinction between sentencing on multiple convictions that arose from a single behavioral incident and convictions of more than one offense arising from the same act.

■ Appellant argues that the second-degree and fifth-degree controlled-substance convictions arose from the same criminal act. The state asserts that the second-degree and fifth-degree controlled-substance convictions arose from a "single behavioral incident," [2] which is governed by a different statute than a "single criminal act," [3] and thus appellant could be convicted on the different offenses, as long as the district court did not impose multiple sentences.

■ Minn.Stat. § 609.035 allows multiple convictions for different incidents (counts) arising out of a "single behavioral incident," but prohibits multiple sentences for conduct that is part of a single behavioral incident. We agree with the state that appellant's conduct was "single behavior" rather than "single act."

■ "Whether multiple offenses arose from a single behavioral incident depends on the facts and circumstances of a particular case." *State v. Bookwalter,* 541 N.W.2d 290, 294 (Minn.1995) (citations omitted). The focus is on whether the conduct occurred at the same time and place and whether there was a single criminal objective. *Id.* Possession of two controlled substances at the same time and place, for personal use, is a single behavioral incident. *State v. Reese,* 446 N.W.2d 173, 180 (Minn.App.1989), *review denied* (Minn. Nov. 15, 1989), *see also State v. Zimmerman,* 352 N.W.2d 452, 454–55 (Minn.App.1984) (noting that possession of two different controlled substances at the

2. [I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts. Minn.Stat. § 609.035, subd. 1 (2000).

3. Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following: (1) A lesser degree of the same crime; or (2) An attempt to commit the crime charged; or (3) An attempt to commit a lesser degree of the same crime; or (4) A crime necessarily proved if the crime charged were proved; or (5) A petty misdemeanor necessarily proved if the misdemeanor charge were proved. Subd. 2. A conviction or acquittal of a crime is a bar to further prosecution of any included offense, or other degree of the same crime. Minn. Stat § 609.04, subds. 1, 2 (2000).

same time constitutes a single behavioral incident). The district court rejected appellant's contention that his convictions were a Minn.Stat. § 609.04 "single criminal act" and thus rejected appellant's argument that not only could he not be sentenced separately but also that he could not have separate convictions. We affirm the district court's analysis that appellant's criminal actions were not part of a single criminal act, but rather were parts of a single behavioral incident.

The district court followed the proper sentencing procedure outlined in Minn. Stat. § 609.035. We conclude that appellant's conviction arose not from a single act, but from a single behavioral incident, which allows multiple convictions but not multiple sentences. Appellant's second-degree controlled-substance possession conviction was for possessing the cocaine. The seven fifth-degree controlled-substance convictions were for possessing hashish and each of six different steroids. None of the convictions resulted from lesser-included offenses.

We agree with appellant that he cannot receive multiple sentences, but we agree with the district court and the state that a "single behavioral incident" does not prohibit multiple convictions.

We conclude that appellant's second-degree and fifth-degree controlled-substance convictions were proper because the district court convicted appellant of all counts, but sentenced appellant only on the second-degree controlled-substance conviction.

## DECISION

Appellant's statements acknowledged that the controlled substances that police found in his garage were his. That con-

cession, coupled with independent testimony that the cocaine was more than six grams in weight, was sufficient to support the conviction for a second-degree controlled-substance crime. The state does not have to prove that appellant knew the exact weight of the controlled substance (cocaine) possessed. The state did prove the essential elements: (1) knowledge that appellant possessed illegal contraband; (2) possession of the requisite weight and substance; and (3) the act took place at the time and place set forth in the complaint.

The record contains sufficient evidence to support appellant's fifth-degree controlled-substance convictions for hashish and steroids.

Informant's statement of short-term traffic at appellant's residence and cocaine residue found in appellant's garbage provided a substantial basis for the district court to conclude there was probable cause to search appellant's residence for drugs.

Although the rules of criminal procedure do not specifically authorize reconsideration of omnibus orders, it was within the district court's discretion to hear or refuse to hear appellant's motion to reconsider.

On the facts, appellant's possession of different controlled substances at the same time and place was not a single criminal act. The record supports appellant's second-degree and fifth-degree controlled-substance convictions.

**Affirmed.**