*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1184**

State of Minnesota,
Respondent,

vs.

Craig Ryan Schwoboda,
Appellant.

**Filed June 1, 2015
Affirmed in part, reversed in part, and remanded
Rodenberg, Judge**

Otter Tail County District Court
File No. 56-CR-12-1974

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

David J. Hauser, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota, Molly R. Hamilton, Amie E. Penny Sayler, Special Assistant Public Defender, Messerli & Kramer, P.A., Minneapolis, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

**UNPUBLISHED OPINION**

**RODENBERG**, Judge

Appellant challenges the district court's denial of his motion to suppress and the district court's imposition of multiple sentences. We affirm in part, reverse in part, and remand.

**FACTS**

At approximately 10:00 p.m. on July 10, 2012, Deputy Zachary Eifert of the Otter Tail County Sheriff's Department responded to a driving complaint. Unable to find the complained-of vehicle, Deputy Eifert approached the parking lot of a cemetery in order to monitor the road and wait for the vehicle to pass. To get to the parking lot, Deputy Eifert drove up a steep driveway and found himself "front bumper to front bumper" with a blue pick-up truck occupied by appellant Craig Ryan Schwoboda and a passenger. Deputy Eifert testified that he did not see the vehicle "until [he] was directly in front of it." The driveway was narrow and, by all accounts, of insufficient width for two vehicles to go past one another. Deputy Eifert observed appellant and his passenger make furtive movements toward the center of the vehicle. Because of the cemetery's "notorious" reputation for crime,[1] Deputy Eifert placed his vehicle in park and approached the truck to speak with the occupants.

---

[1] Deputy Eifert testified that it seemed "like any time one of us [police officers] comes across a vehicle in . . . that cemetery, there's something illegal happening." To support this claim, Deputy Eifert gave an example of finding alcohol containers in the cemetery and a report of a person on a four-wheeler in the area "driving around and drinking alcohol." Deputy Eifert also testified that other members of law enforcement had relayed stories of vehicles fleeing from them at the cemetery. When these incidents occurred is

Deputy Eifert approached the passenger's side window and spoke with both appellant and the passenger. While speaking with them, Deputy Eifert observed in plain view the tops of four syringes "in a container below the center of the . . . front [bench] seat." A later search revealed amphetamine and methamphetamine in appellant's vehicle.

Appellant was charged with two counts of fifth-degree possession of a controlled substance in violation of Minn. Stat. § 152.025, subd. 2(b)(1) (2012); one count for possession of amphetamine and the other for possession of methamphetamine.

Appellant moved to suppress the evidence, arguing that Deputy Eifert stopped and seized him in violation of the Minnesota and United States Constitutions. The district court held that the initial encounter between Deputy Eifert and appellant did not amount to a seizure, as Deputy Eifert merely came upon a parked vehicle in a very narrow driveway. The district court further concluded that, even if there was a seizure, the seizure was lawful, and denied the motion to suppress the evidence.

Appellant agreed to a trial on stipulated facts and the district court found him guilty of both counts of fifth-degree controlled substance possession. The district court sentenced appellant to two concurrent prison sentences of one year and one day in the custody of the Commissioner of Corrections, stayed for ten years on conditions. This appeal followed.

---

unclear, but the record indicates that the four-wheeler incident took place shortly before Deputy Eifert's interaction with appellant.

## DECISION

## I.

Appellant first challenges the district court's denial of his pretrial motion to suppress evidence. Appeal of a district court's denial of a pretrial motion to suppress involves an "independent[] review [of] the facts [to] determine, as a matter of law, whether the district court erred in . . . not suppressing . . . the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999); *see also State v. Fort*, 660 N.W.2d 415, 417-18 (Minn. 2003). We review the application of the Minnesota and United States Constitutions de novo. *Fort*, 660 N.W.2d at 418.

Appellant argues that Deputy Eifert seized his vehicle at the moment Deputy Eifert put his squad car into park and started to walk toward appellant's truck. The district court held that there was no seizure before the officer saw the syringes in plain view. We find it unnecessary to resolve the question of whether or not a seizure occurred as Deputy Eifert pulled up to appellant in the narrow driveway, because Deputy Eifert had a reasonable and articulable suspicion to seize appellant's vehicle by approaching it upon seeing furtive movements by both occupants.

An officer may temporarily stop a person and conduct an investigation "if the officer reasonably suspects [a] person of criminal activity [when] the officer's suspicion [is] based on specific, articulable facts." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995) (citations omitted). An officer's reasonable and articulable suspicion is based on "all the circumstances" and an officer "may draw inferences and deductions that might elude an untrained person." *Id.* However, an officer may not conduct a stop based on a

4

"hunch" or an "inchoate and unparticularized suspicion." *State v. Flowers*, 734 N.W.2d 239, 252 (Minn. 2007) (quotation omitted); *see also Harris*, 590 N.W.2d at 99. "[M]erely being in a high-crime area will not justify a stop." *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130 (1993).

The district court found that, in addition to the cemetery being an area "notorious" for criminal activity, Deputy Eifert also observed appellant and the passenger make "furtive movements toward the center console of the vehicle." Deputy Eifert testified that because the area is notorious for crime, when he saw the furtive movements toward the center console area he "put . . . the squad car in park and quickly got out." While Deputy Eifert did not testify that he was fearful, his testimony implies that he got out of his vehicle and approached appellant's vehicle for his own safety. Officer safety is a well-recognized justification for a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968), *State v. Payne*, 406 N.W.2d 511, 514 (Minn. 1987). Moreover, a parked vehicle in a cemetery at 10:00 p.m., with the two occupants of the vehicle moving furtively when an officer pulls into the cemetery reasonably suggests that criminal activity may be afoot. *See Terry*, 392 U.S. at 30, 88 S. Ct. at 1884 (holding that "where a police officer observes unusual conduct which leads him to reasonably conclude . . . that criminal activity may be afoot," that police officer is authorized to conduct a brief stop). Under all of the circumstances, including Deputy Eifert's informed and trained interpretation of the circumstances, the district court properly concluded that

Deputy Eifert had reasonable and articulable suspicion to conduct a *Terry* stop. It did not err in denying appellant's motion to suppress.

## II.

Appellant also challenges the district court's imposition of two sentences, arguing that both fifth-degree possession convictions arose out of the same behavioral incident and that, therefore, only one sentence may be imposed.[2] The state agrees that the district court erred and that only one sentence should have been imposed.

Whether both of appellant's fifth-degree possession charges arose out of the same behavioral incident is a mixed question of law and fact. *State v. Jones*, 848 N.W.2d 528, 533 (Minn. 2014). We review the district court's findings of fact for clear error and its conclusions of law de novo. *Id.* While "[b]road statements of criminal purpose" will not merge separate offenses into a single behavioral incident, *id.*, "[p]ossession of two controlled substances at the same time and place, for personal use, is a single behavioral incident," *Papadakis*, 643 N.W.2d 357.

The amphetamine and methamphetamine were both found in appellant's vehicle on the night Deputy Eifert came upon appellant in the cemetery. Further, it appears that appellant possessed both drugs for personal use. It is clear to us that appellant's offenses

---

[2] In his brief, appellant challenges the district court's decision to convict him on both counts. At oral argument, however, appellant conceded that convicting appellant on both charges was proper. It is well established that a district court may convict the appellant on multiple counts arising from a single behavioral incident, limited by only narrow exceptions not present here. *State v. Papadakis*, 643 N.W.2d 349, 358 (Minn. App. 2002) (holding that convicting the defendant of multiple controlled substance crimes, each conviction for a different controlled substance, was proper); *see also* Minn. Stat. 609.035, subd. 1 (2014) (enumerating the limited exceptions that bar multiple convictions). We affirm both convictions of fifth-degree possession.

6

arose out of the same behavioral incident. *See State v. Reese*, 446 N.W.2d 173, 180 (Minn. App. 1989) We therefore reverse in part and remand with instructions that the district court vacate one of appellant's sentences.

**Affirmed in part, reversed in part, and remanded.**