David R. BAKER, Appellant,

v.

**AMTRAK NATIONAL RAILROAD PASSENGER CORPORATION,
Respondent.**

No. CX–98–509.

Court of Appeals of Minnesota.

Jan. 28, 1999.

Michael D. Doshan, Fredric A. Bremseth, Thomas A. Geng, Doshan & Bremseth, Wayzata, MN (for appellant).

Eric J. Magnuson, Todd P. Zettler, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN (for respondent).

Considered and decided by PETERSON, Presiding Judge, SCHUMACHER, Judge, and HARTEN, Judge.

## O P I N I O N

PETERSON, Judge.

In this appeal from a judgment following a jury trial, appellant argues that the trial court erred by (1) denying his motions for JNOV, or alternatively, a new trial; (2) denying his motion for a *Schwartz* hearing; and (3) denying his request to make a motion to reconsider his posttrial motions under Minn. R. Gen. Pract. 115.11. We affirm.

## FACTS

Appellant David R. Baker sued respondent Amtrak National Railroad Passenger Corporation under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1994), alleging that he suffered disabling back inju-

ries and impotence as a result of two work-related accidents. Baker alleged that in the first accident, he injured his back when he fell to the floor after the chair he was sitting on collapsed. Baker alleged that he aggravated his back injury in a second accident that occurred while he was unloading boxes from a train.

The case was tried to a jury. While deliberating, the jury asked the trial judge the following question: "Could money be put in escrow for future medical expenses in regards to his impotence or back surgery?" The trial judge responded "no" and explained:

> Any damages which are awarded in a civil lawsuit are paid to the prevailing party immediately. As a result, you were instructed that you are to discount to the present value of a dollar any future medical damages which you find from the evidence to be reasonably certain to occur in the future.

The judge did not advise Baker's attorney of the jury's inquiry.

The jury returned a verdict that determined (1) Amtrak was not negligent in connection with Baker's first accident, and (2) both parties were negligent and responsible for the second accident. On a special verdict form, the jury listed the percentage of each party's negligence for the second accident as "Defendant 5%" and "Plaintiff 95%." The jury found that the total dollar amount necessary to compensate Baker for the injuries he sustained in the second accident was $95,000.

The trial court misread the jury's special verdict form and ordered judgment for Baker in the amount of $90,250 (95% of $95,000). After discovering its error, the trial court amended the order for judgment to award Baker $4,750 (5% of $95,000).

Baker moved for a *Schwartz* hearing, or alternatively, for an order granting JNOV or a new trial. During the hearing on the motion, the trial judge explained that he had misread the jury form and that the jurors had looked at him with complete puzzlement when he suggested that Baker was going to get 95% of the amount awarded for the sec-

ond accident. The judge also stated that the jury had asked one question during deliberations and that he had responded to it. The trial court concluded that there was no evidence that the jury had made a clerical mistake or was confused about the jury form and denied Baker's motion for a *Schwartz* hearing. The court also denied Baker's motion for JNOV or a new trial.

Pursuant to Minn. R. Gen. Pract. 115.11, Baker made a written request to the trial court for permission to make a motion to reconsider the order denying his posttrial motions. In his written request, Baker stated that he believed the trial court's answer to the jury's question during deliberations cast further suspicion on the jury's verdict. In a written response, the trial court refused Baker's request to allow him to make a motion to reconsider the order. Baker appealed from the final judgment.

## DECISION

### I.

Baker argues that the trial court erred in denying his motion for JNOV, or alternatively, a new trial because (1) the evidence overwhelmingly established that Amtrak's negligence was the cause of his first back injury, and (2) there is no evidence to support the jury's finding that he was 95% at fault for the second accident.

On review of a denial of JNOV, this court must affirm the trial court if any competent evidence reasonably tends to support the verdict. *Rettman v. City of Litchfield*, 354 N.W.2d 426, 429 (Minn.1984). This court must assume that testimony for the nonmoving party is credible and must also permit every reasonable inference to be drawn from the evidence in favor of the nonmoving party. *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983). JNOV will only be granted when it would be impossible for reasonable minds to come to a different conclusion because the evidence is so overwhelmingly on one side. *Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983). The trial court's denial of JNOV is a pure question of law. *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 14 (Minn.1979).

 A motion for a new trial should be cautiously and sparingly granted by a trial court. *Leuba v. Bailey,* 251 Minn. 193, 207–08, 88 N.W.2d 73, 83 (1957). The rules of civil procedure allow a new trial when the decision "is not justified by the evidence." Minn. R. Civ. P. 59.01(g). An appellate court will substitute its judgment for that of the jury only if there is no evidence reasonably tending to sustain the verdict or if the verdict is manifestly and palpably against the weight of the evidence. *Otterness v. Horsley,* 263 N.W.2d 403, 405 (Minn.1978). Granting a new trial is left largely to the discretion of the trial court, and a trial court's decision will be reversed only for a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.,* 304 N.W.2d 346, 352 (Minn.1981).

 Under FELA, a railroad employee may recover for a work-related injury if the employer's negligence played any part in producing the injury. *Richardson v. Missouri Pac. R.R. Co.,* 677 F.2d 663, 665 (8th Cir.1982). To establish Amtrak's negligence under FELA, Baker was required to show that Amtrak breached its duty to provide him with a reasonably safe workplace. *Peyton v. St. Louis Southwestern Ry. Co.,* 962 F.2d 832, 833 (8th Cir.1992). FELA does not require an employer to exercise the highest degree of care, but only the same degree of care as an ordinary, reasonable person need exercise in similar circumstances. *Id.* FELA provides that although an employee's contributory negligence does not bar recovery, the employee's damages are to be diminished by the amount of the contributory negligence. *Janke v. Duluth & Northeastern R.R. Co.,* 489 N.W.2d 545, 547 (Minn.App.1992) (citing 45 U.S.C. § 53 (1988)), *review denied* (Minn. Oct. 28, 1992).

 The record contains evidence that (1) before his first accident, Baker did not notice anything wrong with the chair, and no one had complained to Amtrak regarding any problems with the chair; (2) no one other than Baker witnessed the accident; (3) Baker had previously fallen out of the chair; and (4) Baker had a history of back problems. There was also inconclusive testimony regarding whether Amtrak knew about another broken chair that was identical to the chair that broke while Baker sat in it. Viewing this evidence in the light most favorable to the verdict, we conclude that a reasonable jury could have found that Amtrak exercised reasonable care and was not negligent with regard to Baker's first accident.

 The record contains evidence that (1) before the second accident, Baker was cleared by an Amtrak company doctor to return to work fulltime, without restrictions; (2) Baker's normal work duties included assisting the baggage handler with his duties, which included lifting items weighing up to and more than 50 pounds; (2) Baker never checked with his chiropractor before he returned to work; (3) Baker never objected to being back at work without restriction; (4) Baker unloaded several boxes weighing 30 to 40 pounds, without requesting any help; and (5) Baker never informed Amtrak that he was physically unable to unload the boxes. Viewing this evidence in the light most favorable to the verdict, we conclude that reasonable jurors could find that Baker failed to use reasonable care in unloading the train and was 95% at fault for the accident.

Because the evidence was not so overwhelming that reasonable minds could not reach the verdict that the jury reached, the trial court did not err by denying Baker's motion for JNOV. Because the evidence reasonably sustains the verdict, the trial court did not clearly abuse its discretion by denying Baker's motion for a new trial.

## II.

 Baker argues that the trial court abused its discretion by denying his request for a *Schwartz* hearing. Baker concedes that there is no evidence of jury misconduct, but argues that there is evidence of an inadvertent clerical mistake. Baker contends that the only rational explanation for the jury's verdict is that the jury mixed up the parties due to the use of terms foreign and confusing to nonattorneys, awarding him 5% instead of 95% of the damages from the second accident. Baker contends that a clerical mistake is supported by evidence that (1) the trial court originally misread the jury's verdict,

finding Amtrak 95% negligent, and (2) the jury deliberated for more than six hours.

In *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960), the supreme court established a method for inquiring into allegations of juror misconduct. A *Schwartz* hearing may also be conducted to correct a clerical error in a jury verdict. *Erickson by Erickson v. Hammermeister*, 458 N.W.2d 172, 175 (1990), *review denied* (Minn. Sept. 20, 1990). But this court has stated:

> "Although trial courts are urged to be fairly lenient in the granting of *Schwartz* hearings, their purpose is to determine juror misconduct, such as outside influence improperly brought to bear on jurors. The purpose of a *Schwartz* hearing does not include the correction of a miscomprehension by a juror or jurors. The assertion that the jury was confused and did not understand the effect of the verdict has been rejected as a basis for a *Schwartz* hearing. Jurors may not impeach their verdict on the basis that they did not understand the legal effect of that verdict."

*Senf v. Bolluyt*, 419 N.W.2d 645, 648 (Minn. App.1988) (quoting *Frank v. Frank*, 409 N.W.2d 70, 72–73 (Minn.App.1987), *review denied* (Minn. Sept. 30, 1987)), *review denied* (Minn. Apr. 15, 1988). The trial court exercises broad discretion in determining whether to grant a *Schwartz* hearing. *State v. Benedict*, 397 N.W.2d 337, 339 (Minn.1986).

Although a *Schwartz* hearing may be held in a civil case to correct a clerical error, the record does not indicate that the jury made a clerical mistake when it recorded the parties' contributory fault concerning the second accident. As Baker claims, the special verdict form question that asked the jury to determine the percentage of each party's negligence referred to the parties only as "plaintiff" and "defendant." But the caption of the form identified Baker as the plaintiff and Amtrak as the defendant. In addition, questions 1, 2, 3, 7, 8, and 9 specifically referred to Amtrak as "Defendant Amtrak." Also, Baker's attorney spent considerable time during his final argument explaining the special verdict form to the jury.

Given the clarity of the verdict form and the explanation of the form provided by Baker's attorney, the facts that the jury deliberated for six hours and that the trial judge misread the special verdict form do not indicate that the jury made a clerical mistake. Furthermore, the trial judge noted that the jury looked at him with complete puzzlement when he stated that Baker was going to get 95% of the damages resulting from the second accident. The trial court did not abuse its broad discretion in refusing to grant Baker a *Schwartz* hearing.

### III.

Baker challenges the trial court's denial of his request to bring a motion to reconsider his posttrial motions.

In the past, this court has held that the rules of civil procedure do not authorize a motion to reconsider. *Sullivan v. Spot Weld, Inc.*, 560 N.W.2d 712, 715 (Minn.App.1997), *review denied* (Minn. Apr. 24, 1997); *Welch v. Commissioner of Pub. Safety*, 545 N.W.2d 692, 694 (Minn.App.1996). However, after those cases were decided, the supreme court adopted Minn. R. Gen. Pract. 115.11 [1], which created a procedure for bringing a motion to reconsider when compelling circumstances are shown.

Minn. R. Gen. Pract. 115.11 provides:

> Motions to reconsider are prohibited except by express permission of the court, which will be granted only upon a showing of compelling circumstances. Requests to make such a motion, and any response to such requests, shall be only by letter to the court of no more than two pages in length, a copy of which must be sent to opposing counsel.

Amtrak contends that the trial court's response to Baker's request for reconsideration is not reviewable because Minn. R. Civ.App. P. 103.04 authorizes appellate review only of orders issued by the trial court that affect a judgment, and the trial court did not issue an order, but instead simply refused a request to schedule a hear-

1. Minn. R. Gen. Pract. 115.11 became effective on January 1, 1998.

ing to reconsider its earlier decision. Minn. R. Gen. Pract. 115.11 does not require a formal motion to request permission to make a motion to reconsider and does not state that the court shall respond to the request by order. Here, the trial court sent Baker a letter in response to his request. The trial court's informal response to Baker's informal request appears to comply with the plain language of the rule. We decline to deny review of the denial of Baker's request to bring a motion to reconsider simply because *the trial court did not respond in an order.*

■ But even if we treat the trial court's letter denying Baker's request to bring a *motion for reconsideration as an order,* it is not an order that is appealable under Minn. R. Civ.App. P. 103.03. Minn. R. Civ.App. P. 103.03 permits appeals only from specified judgments and orders. The only provision in Minn. R. Civ.App. P. 103.03 that is not explicitly inapplicable to the trial court's letter is clause (e), which permits an appeal "from an order which, in effect, determines the action and prevents a judgment from which an appeal might be taken."

The trial court's denial of Baker's request to bring a motion to reconsider neither determined Baker's action nor prevented a judgment *from which Baker could appeal.* When Baker made his request to the trial court, his action had been determined and judgment had been entered. No further action by the trial court was needed to permit Baker to take an appeal. Consequently, the trial court's denial of Baker's request to bring a motion to reconsider is not appealable.

Our conclusion that the trial court's denial of Baker's request to bring a motion to reconsider is not appealable is consistent with a recent amendment to Minn. R. Civ.App. P. 104.01 [2]. The amendment added the following subdivision:

> Unless otherwise provided by law, if any party serves and files a proper and timely motion of a type specified immediately below, the time for appeal of the order or judgment that is the subject of such motion runs for all parties from the service by any party of notice of filing of the order

disposing of the last such motion outstanding. This provision applies to a proper and timely motion:

> (a) for judgment notwithstanding the verdict under Minn. R. Civ. P. 50.02;
>
> (b) to amend or make findings of fact under Minn. R. Civ. P. 52.02, whether or not granting the motion would alter the judgment;
>
> (c) to alter or amend the judgment under Minn. R. Civ. P. 52.02;
>
> (d) for a new trial under Minn. R. Civ. P. 59;
>
> (e) for relief under Minn. R. Civ. P. 60 if the motion is filed within the time for a motion for new trial; or
>
> (f) in proceedings not governed by the Rules of Civil Procedure, a proper and timely motion that seeks the same or equivalent relief as those motions listed in (a)-(e).

Minn. R. Civ.App. P. 104.01, subd. 2.

The advisory committee comment for the new rule explains:

> Subdivision 2 is new and enumerates the post-trial motions that will toll the running of the time to appeal. The rule serves two equally important purposes: to make it clear that an appeal is not necessary until the proper motion is decided, and to avoid a party's erroneous assumption that an improper or unauthorized motion would prevent the running of an appeal deadline. The list is intended to be exhaustive for civil actions in the district courts. * * * The motions enumerated in this subdivision exclude "motions for reconsideration" because these motions are never required by the rules and are considered only if the *trial court permits the motion to be filed.*

Minn. R. Civ.App. P. 104 advisory comm. cmt.—1998 amendments.

■ By expressly providing that if one of the listed motions is made, the time to appeal a judgment or an order does not begin to run until the motion is disposed of, Minn. R. Civ.App. P. 104.01, subd. 2, makes a decision on the motion a prerequisite of the appeal. In contrast, Minn. R. Civ.App. P. 104.01,

**2.** The amendment to Minn. R. Civ.App. P. 104.01 became effective on January 1, 1999.

subd. 2, and the advisory committee comment reflect a determination that a decision on a motion for reconsideration is not a prerequisite of an appeal from a judgment or order and the appeal should not be delayed by a motion for reconsideration.

Instead of delaying an appeal from a judgment or order until a motion for reconsideration is disposed of, any claimed errors for which reconsideration was sought can be directly reviewed in the appeal from the judgment or order. If the trial court committed reversible error, the error can be corrected in the appeal from the judgment or order. And if the trial court made no reversible error, its refusal to allow a motion for reconsideration or to change its decision upon reconsideration is harmless.

This appeal was properly taken from the judgment on the merits and challenges orders that involve the merits of the judgment. Our review is limited to those decisions. *Moberg v. Moberg,* 347 N.W.2d 791, 794 (Minn.1984) (if appeal challenges some rulings that are appealable and some that are not, appellate review is limited to those that are appealable).

## DECISION

The trial court did not err in denying Baker's motion for JNOV. The trial court did not abuse its discretion in denying Baker's motion for a new trial or his request for a *Schwartz* hearing. The trial court's denial of Baker's request to make a motion to reconsider the order denying his posttrial motions is not appealable.

**Affirmed.**